UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL TURLEY,<br><br>     Plaintiff,<br><br>v.<br><br>SPENCER COX, an individual; JON PIERPONT, an individual; and JOHN BARRAND, an individual,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [ECF NO. 39] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00685-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendants Governor Spencer Cox, Jon Pierpont, and John Barrand's Motion to Dismiss,[1] Plaintiff General Michael Turley's response brief,[2] and Defendants' reply.[3] Plaintiff asserts that Defendants denied him due process and wrongfully terminated him as the Adjutant General of the Utah National Guard.[4] Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[5]

---

[1] Defs.' Mot. to Dismiss Pl.'s First Am. Compl. for Lack of Jurisdiction and Failure to State a Claim upon which Relief may be Granted, ECF No. 39, filed January 16, 2026.

[2] Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Pl.'s First Am. Compl., ECF No. 44, filed February 23, 2026.

[3] Defs.' Reply to Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 53, filed March 23, 2026.

[4] Am. Compl., ECF No. 36, filed December 22, 2025.

[5] *See* DUCivR 7-1(g).

## BACKGROUND

In 2019, Governor Gary Herbert appointed General Turley to serve as the Adjutant General of the State of Utah.[6] The Adjutant General is "the commanding general of the Utah National Guard and the Utah State Defense Force."[7]

In 2021, the Department of the Army Office of the Inspector General ("Army IG") opened an investigation into allegations of misconduct by General Turley.[8] In September 2022, the ongoing investigation was leaked to the media.[9] Around that same time, Governor Cox and senior members of his staff also received anonymous tips containing allegations against General Turley.[10]

In response, Governor Cox requested that Mr. Barrand, the director of the Division of Human Resources Management for the State of Utah ("DHRM"), investigate the allegations.[11] Mr. Barrand conducted an initial interview, where General Turley denied any misconduct and "shared what little information he had regarding the Army IG's ongoing investigation."[12] DHRM investigators followed up by interviewing a few members of General Turley's staff and conducting an additional interview with General Turley that lasted several hours.[13]

---

[6] Am. Compl. ¶ 8.
[7] Utah Code § 39A-1-201(2); Am. Compl. ¶ 9.
[8] Am. Compl. ¶ 13.
[9] *Id.* ¶ 14.
[10] *Id.*
[11] *Id.* ¶¶ 4, 15.
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 16.

2

After the investigation concluded, Barrand submitted a report (the "Barrand Report") to Mr. Pierpoint, Governor Cox's Chief of Staff.[14] That report stated: "It is my assessment, based on our review of this matter, that we currently have no actionable information regarding [the allegations against General Turley] and have exhausted all reasonable avenues of obtaining further information at this time."[15] Mr. Barrand's report indicated that the DHRM investigation "was limited by the lack of specificity of the allegations" and that the Army IG declined to share any information about their ongoing investigation.[16] The report concluded that "there is no basis to find that the Adjutant General has engaged in inappropriate conduct. Based on this, I recommend that the Governor await the conclusion of the Army Inspector General's investigation."[17]

On August 16, 2023, Governor Cox, Mr. Pierpont, and Mr. Barrand learned that *USA Today* intended to run a news story that the Army IG had substantiated an "inappropriate conduct" allegation against General Turley.[18] Mr. Pierpont and Mr. Barrand contacted General Turley to inform him of the upcoming story.[19] General Turley denied any allegation against him.[20] That said, as a "good soldier," General Turley discussed "the possibility of resigning if it could be done with certain conditions and without immediate effect."[21] At this time, none of the relevant parties had seen a copy of the Army IG's report.[22]

---

[14] *Id.* ¶ 17; Barrand Report, ECF No. 39-3, filed January 16, 2026.
[15] *Id.*
[16] Barrand Report.
[17] Am. Compl. ¶ 17; Barrand Report.
[18] Am. Compl. ¶ 19.
[19] *Id.* ¶ 19.
[20] *Id.*
[21] *Id.* ¶ 20.
[22] *Id.*

Either later that same day or on the next day, Mr. Barrand called General Turley again.[23] Mr. Barrand allegedly stated that he had been instructed by Governor Cox, with the agreement of Mr. Pierpoint, to inform General Turley that he had 90 minutes to resign, or Governor Cox would terminate him.[24] At this time, neither General Turley, Mr. Barrand, Mr. Pierpoint, nor Governor Cox had seen a copy of the Army IG's report.[25] Neither had any of the Defendants done any additional investigation since the Barrand Report.[26]

Under this threat of termination, the complaint states that General Turley sent a "conditional letter of resignation . . . which indicated that General Turley was willing to resign if the resignation was effective September 16, 2023."[27] The Letter of Resignation, in whole, states: "To Whom it May Concern: Effective today, August 17, 2023, I have requested an effective date of retirement from the US Army. I also wish to resign from my state position as the Adjutant General of Utah, effective September 16, []2023."[28]

Despite General Turley's letter of resignation stating that he would resign effective September 16, 2023, Governor Cox appointed General Boyack acting Adjutant General on August 17, 2023.[29] On August 20, 2023, General Boyack was appointed permanent Adjutant General.[30]

---

[23] *Id.* ¶¶ 20, 23; Letter of Resignation, ECF No. 39-5, filed January 16, 2026 (dated August 17, 2023).
[24] Am. Compl. ¶ 21.
[25] *Id.* ¶ 22.
[26] *Id.*
[27] *Id.* ¶ 23.
[28] Letter of Resignation; *see also*, *infra*, Discussion I.D.
[29] *Id.* ¶ 26.
[30] *Id.*

Later, Mr. Barrand spoke to General Turley and allegedly stated that they had "screwed up" General Turley's termination.[31]

Shortly thereafter, General Turley received a heavily redacted copy of the Army IG's report.[32] The report purported to confirm a single allegation of misconduct.[33] General Turley alleges that the purportedly confirmed allegation is false and that he can demonstrate as much.[34]

General Turley attempted to rescind his resignation on September 15, 2023.[35] Mr. Barrand responded, "[s]peaking on behalf of your manager, Governor Cox, we are not accepting your recission of resignation."[36] This lawsuit followed.

## STANDARD

"[F]or the purposes of resolving a Rule 12(b)(6) motion, [the court accepts] as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff."[37] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[38]

## DISCUSSION

Defendants seek dismissal of Plaintiff's four claims: (1) violation of due process; (2) wrongful termination; (3) violation of Utah Code § 39A-1-201; and (4) civil conspiracy. The

---

[31] *Id.* ¶ 24.
[32] *Id.* ¶ 32.
[33] *Id.*
[34] *Id.* ¶ 33.
[35] *Id.*
[36] *Id.* ¶¶ 34–35.
[37] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).
[38] *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

court considers each claim in turn, after deciding the threshold dispute about Defendants' exhibits.

## I.        Evidence Outside of the Pleadings

As a threshold issue, the court first considers the parties' dispute over the exhibits Defendants attached to their motion to dismiss. Under Tenth Circuit precedent, the court can consider "documents incorporated by reference into the complaint" even if they are not attached to the complaint.[39] Courts can consider such documents if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[40] The court considers each of Defendants' presented documents in turn.

### A.        Anonymous Email Complaint

Defendants present an anonymous email sent to Governor Cox's office with allegations against Plaintiff.[41] The complaint briefly mentions that "Governor Cox and senior members of the Governor's staff also received anonymous tips" with allegations against Plaintiff.[42] Based on these tips and the leaked Army IG investigation, Defendants began their own investigation.[43] Defendants present this email as the anonymous tips Governor Cox's office received. But it is not clear this email is the anonymous tip from the complaint, nor is this email central to Plaintiff's claim. While the complaint briefly mentions that Governor Cox's office received

---

[39] *Slater v. A.G. Edwards & Sons*, 719 F.3d 1190, 1196 (10th Cir. 2013).

[40] *Waller v. Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

[41] Anonymous Email, ECF No. 39-2, filed January 16, 2026.

[42] Am. Compl. ¶ 14.

[43] Am. Compl. ¶ 15.

anonymous tips, it does not say how those anonymous tips were received or specifics on what the allegations contained. Neither is this email central to Plaintiff's claim. The anonymous email is from a couple years before Plaintiff's termination and is not presented in the complaint as a major reason behind his eventual termination. Since the anonymous email is only vaguely referred to in the complaint and not central to Plaintiff's claim, the court will not consider it at the motion to dismiss stage.

### B.   Barrand Report

Next, Defendants present a copy of the email from Mr. Barrand to Mr. Pierpont, reporting on the findings of DHRM's investigation into the allegations against Plaintiff.[44] Plaintiff's complaint directly quotes from this report, and refers to it frequently as a basis for his claims that Defendants did not have good cause to terminate Plaintiff.[45] This report is referenced in the complaint and central to Plaintiff's claims. Accordingly, the court will consider the full report provided by Defendants.

### C.   Army Times Reporter Inquiry

Next, Defendants provide an email from a reporter at the Army Times, seeking comment on a possible story about the allegations and investigation into Plaintiff.[46] But this email is never mentioned in Plaintiff's complaint. Thus, since it is not referenced in the complaint, the court cannot consider this email at this stage.

---

[44] Barrand Report.
[45] Am. Compl. ¶¶ 17, 22, 73, 80.
[46] Army Times Email, ECF No. 39-4, filed January 16, 2026.

### D.   Letter of Resignation

Next, Defendants provide Plaintiff's Letter of Resignation.[47] This letter is referenced in the complaint multiple times.[48] It is also central to Plaintiff's claim that he did not voluntarily resign, but instead submitted a conditional resignation that he rescinded when those conditions were not met.[49] Accordingly, the court will consider the Letter of Resignation at this stage.

### E.   National Guard Bureau Letter of Resignation

Next, Defendants provide a letter of resignation from Plaintiff addressed to the Chief of the National Guard Bureau.[50] But this letter is never referenced in the complaint. At best, this letter was referenced in Plaintiff's other letter of resignation,[51] but a document referenced within another document mentioned in the complaint is not itself referenced in the complaint. Accordingly, the court will not consider this document at this time.

### F.   *USA Today* News Article

Defendants also cite a *USA Today* news article.[52] But this news article is never referenced in the complaint. The complaint only states that Defendants learned that *USA Today intended* to run a story on the investigation into Plaintiff. The complaint never states if the story was published or alleges that Defendants saw the article before making their decisions. The news article itself is not referenced in the complaint nor is it central to Plaintiff's claims. Accordingly, the court will not consider it at this stage.

---

[47] Letter of Resignation.
[48] Am. Compl. ¶¶ 23, 26, 28, 33–35, 60–61.
[49] *Id.*
[50] National Guard Bureau Letter of Resignation, ECF No. 39-2, filed January 16, 2026.
[51] Letter of Resignation ("Effective today, August 17, 2023, I have requested an effective date of retirement from the US Army.").
[52] MTD n.31.

8

## II.      Qualified Immunity

Plaintiff claims that his unlawful termination deprived him of property without due process of law in violation of the Fourteenth Amendment. This claim includes both substantive and procedural due process. Defendants argue that they have qualified immunity from Plaintiff's claim.

"[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[53] To overcome a qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated statutory or constitutional rights, and (2) that the right was "clearly established" at the time of the challenged conduct.'"[54] "The plaintiff must make this demonstration 'on the facts alleged.'"[55] If a plaintiff fails to establish either prong of the standard, the defendant prevails.[56]

"[T]he doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[57] The Supreme Court instructs that "[i]t is not enough that a rule be suggested by then-existing precedent, the 'contours of the law must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[58] In other words, the "[e]xisting law must have placed the constitutionality of the officer's conduct 'beyond debate.'"[59] This ordinarily means that there "must be a Supreme Court

---

[53] *Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *District of Columbia v. Wesby*, 583 U. S. 48, 63 (2018)).
[54] *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).
[55] *Id.* (quoting *Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009)).
[56] *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).
[57] *Tahlequah*, 595 U.S. at 12 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[58] *Id.* (quoting *Wesby*, 583 U.S. at 63).
[59] *Wesby*, 538 U.S. at 63 (quoting *Ashcroft* 563 U.S. at 741).

or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction."[60]

## A.    Substantive Due Process

"A public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons."[61] To violate substantive due process, the government action must "deprive[] a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience."[62] "To satisfy this standard, 'a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.'"[63] "Instead, a plaintiff 'must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'"[64]

Here, Defendants' actions do not shock the conscience because Defendants chose to believe one source of information over another. Defendants received complaints about Plaintiff's behavior and were aware of the ongoing Army IG investigation.[65] Although Defendants initially declined to act, that changed when they became aware of *USA Today*'s intention to run a story that one or more allegations against Plaintiff had been substantiated. Even without reviewing the Army IG's report, it does not "shock the judicial conscience" that Defendants chose to credit the

---

[60] *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017)

[61] *Darr v. Telluride*, 495 F.3d 1243, 1257 (10th Cir. 2007) (citing *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[62] *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019).

[63] *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (citing *Uhlrig v. Harder,* 64 F.3d 567 (10th Cir. 1995)).

[64] *Id.*; *Doe*, 912 F.3d at 1300 ("To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression. The behavior complained of must be egregious and outrageous.") (cleaned up).

[65] Am. Compl. ¶ 14.

10

information they were receiving about the report's findings or decided that uncertainty surrounding Plaintiff's fitness for his position warranted taking action. Defendants' choice to rely on some sources of information—here, *USA Today*, the anonymous complaints, and the ongoing Army IG investigation—rather than on Plaintiff's assurances is the type of judgment call that qualified immunity is designed to protect.[66] It was not egregious and outrageous. Neither was it plausibly an abuse of authority or an instrument of oppression. Consequently, Defendants are entitled to qualified immunity on this claim.

Even if Plaintiff had met the "shock the conscience" standard, he must also identify "[e]xisting law [that] placed the constitutionality of the officer's conduct 'beyond debate.'"[67] Plaintiff does not do this. He provides a summary reference to single case, *Tonkovich v. Kansas Board of Regents,*[68] but makes no effort to explain why that case would have put the constitutionality of Defendants' conduct here beyond debate.[69] Indeed, Plaintiff cites *Tonkovich* only for its elaboration of the "conscience-shocking" standard, which was addressed in the previous section. Therefore, Plaintiff also fails to establish that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[70]

### B.    Procedural Due Process

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process

---

[66] *Tahlequah*, 595 U.S. at 12 ("[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Wesby*, 583 U. S. at 63).
[67] *Wesby*, 538 U.S. at 63 (quoting *Ashcroft* 563 U.S. at 741).
[68] Opp. 15.
[69] *Id*.
[70] *Tahlequah*, 595 U.S. at 12 (quoting *Wesby*, 583 U.S. at 63).

11

protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[71] It is undisputed that Plaintiff possessed a protected interest in his employment. Thus, the court only addresses whether Plaintiff was afforded an appropriate level of process.

"An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."[72] "Because 'the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest,' there must be 'some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.'"[73] "[S]uch a hearing requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story."[74] "But '[a] full evidentiary hearing is not required prior to an adverse employment action'; it suffices that the employee is 'given notice and an opportunity to respond.'"[75]

Here, Defendants argue that (1) Plaintiff did not merit a hearing because he voluntarily resigned his position and (2) Plaintiff received adequate notice and the opportunity to respond when the DHRM conducted its initial investigation. But neither of these arguments are supported by the facts as alleged in the complaint.

---

[71] *Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1078 (10th Cir. 2011) (quoting *Riggins v. Goodman,* 572 F.3d 1101, 1108 (10th Cir. 2009)).

[72] *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (internal quotation marks omitted).

[73] *Merrifield*, 654 F.3d at 1078 (quoting *id.*).

[74] *Id.* (quoting *Riggins,* 572 F.3d at 1108); *see also Harrell v. Stitt*, No. 23-6048, 2024 WL 3372624, at *3 (10th Cir. July 11, 2024) ("Public employees with a property interest in continued employment are 'entitled to oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story' prior to termination.") (quoting *Cleveland Bd. of Educ.*, 470 U.S. at 535).

[75] *Id.*

First, the complaint alleges that Plaintiff submitted a *conditional* letter of resignation, not that he voluntarily resigned. The complaint states that Plaintiff discussed with Defendants "the possibility of resigning if it could be done with certain conditions and without immediate effect."[76] The complaint further alleges that after Defendants demanded his resignation within 90 minutes, Plaintiff sent a letter of resignation on August 16 or 17, 2023, with an effective date of resignation on September 16, 2023.[77] But the letter does not state whether the resignation was being offered even if Defendants moved forward with terminating Plaintiff before the stated effective date. It is a reasonable inference that the letter of resignation would not be effective unless Defendants agreed to the date of resignation. Thus, taking the fact allegations as true and making all reasonable inferences in Plaintiff's favor, Plaintiff did not voluntarily resign his position.

Second, because the complaint alleges that Defendants and Plaintiff lacked the relevant information during the DHRM investigation, Defendants could not have provided Plaintiff with adequate notice or an opportunity to respond.

Mr. Barrand first conducted a telephone interview with Plaintiff.[78] There, the complaint alleges that Plaintiff denied any misconduct, cooperated fully in the investigation, and "shared what *little* information he had regarding the Army IG's ongoing investigation."[79] Defendants suggest that Plaintiff could not have denied any misconduct without first being told what

---

[76] Am. Compl. ¶ 20.
[77] Am. Compl. ¶ 23; Letter of Resignation.
[78] Am. Compl. ¶ 15.
[79] *Id.*

misconduct he was accused of. Not so. Plaintiff could generally deny any misconduct without knowledge of the specific allegations.

Next, DHRM investigators conducted a multi-hour follow up interview with Plaintiff, but this interview likewise could not have afforded adequate notice as neither Defendants nor the investigators yet knew the specific allegations. Indeed, Mr. Barrand's report indicates that the DHRM investigation "was limited by the lack of specificity of the allegations" and that the Army IG declined to share any information about their ongoing investigation.[80] Even including when Defendants demanded Plaintiff's resignation or termination in August 2023, the complaint alleges that "none of the relevant parties had a copy of the Army IG's report."[81] According to the complaint, at most, Defendants knew that *USA Today* intended to run a story that the Army IG's report substantiated an unspecified allegation. But neither Defendants nor Plaintiff had information about the allegation or the evidence substantiating the allegation.

Before termination, Plaintiff was due oral or written notice of the allegations against him and an explanation of the employer's evidence.[82] Taking the allegations as true and making all reasonable inferences in Plaintiff's favor, neither Defendants nor Plaintiff had that information at the relevant time. Thus, at this stage of the litigation, Plaintiff has plausibly pled that Defendants' actions violated his procedural due process rights.

Those procedural due process rights are also clearly established. To be clearly established, there "must be a Supreme Court or Tenth Circuit opinion on point, or the clearly

---

[80] Barrand Report
[81] Am. Compl. ¶ 22.
[82] *Merrifield*, 654 F.3d at 1078.

established weight of authority from other circuits must point in one direction."[83] Here, the Supreme Court and the Tenth Circuit have repeatedly addressed the requirements for terminating a public employee with a property interest in their continued employment.[84] The three required elements: "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story."[85] While informal proceedings such as the investigation here can meet those requirements,[86] where Defendants themselves did not even have knowledge of the allegations or evidence in question, terminating Plaintiff would violate his procedural due process rights. Indeed, the complaint alleges that Defendants knew that their actions were not in line with legal requirements, as shown by allegedly calling Plaintiff and admitting that they "screwed up" his termination.[87]

Overall, the complaint has alleged that Defendants violated clearly established procedural due process law. This is sufficient to overcome Defendants' qualified immunity for the procedural due process claim at this stage.

---

[83] *Pompeo*, 852 F.3d at 981.

[84] *See, e.g.*, *Cleveland Bd. of Educ.*, 470 U.S. at 535; *Riggins,* 572 F.3d at 1108; *Merrifield*, 654 F.3d at 1078; *Harrell*, 2024 WL 3372624, at *3.

[85] *Merrifield*, 654 F.3d at 1078.

[86] *Riggins v. Goodman*, 572 F.3d 1101 (10th Cir. 2009) ("We have upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination.") (internal citations omitted).

[87] Am. Compl. ¶ 24.

### III.      Wrongful Termination

Defendants argue that Plaintiff's wrongful termination claim should be dismissed because (1) the statute does not provide a private right of action; and (2) even if it did, Defendants had cause to terminate Plaintiff.

Under Utah Law, it is generally presumed that all employment relationships are at-will, meaning that "the employer or the employee may terminate the employment for any reason (or no reason) except where prohibited by law."[88] But this presumption can be overcome by showing that:

> (1) there is an implied or express agreement that the employment may be terminated only for cause or upon satisfaction of [some] agreed-upon condition; (2) a statute or regulation restricts the right of an employer to terminate an employee under certain conditions; or (3) the termination of employment constitutes a violation of a clear and substantial public policy.

Here, Plaintiff asserts that the second exception has been met. Indeed, Utah Code § 39A-1-201 states that the Adjutant General "holds office for a term of six years, unless terminated by resignation, disability, age, . . . or for cause."[89] However, Defendants respond that § 39A-1-201 does not create a private right of action and cannot support a wrongful termination claim.

The Utah Supreme Court has not addressed whether a statute must create a private right of action in order to support the second exception and, consequently, a wrongful termination

---

[88] *Hansen v. Am. Online, Inc.*, 2004 UT 62, ¶ 7. The court notes that some cases state this is only for employment relationships entered into for an *indefinite* period of time. *Id.* Given that Plaintiff was subject to six-year terms, it is not wholly clear that at-will employment applied to him. However, both parties present their arguments on the basis of this framework. As such, the court considers it conceded, at least for the purposes of this motion, that the *Hansen* framework applies.

[89] Utah Code § 39A-1-201 (2022).

claim. Accordingly, this court must "attempt to predict how [Utah's] highest court would interpret [the issue]."[90]

First, Defendants point to *Conner v. Dep't of Commerce* from the Utah Court of Appeals.[91] There, the plaintiff asserted a claim for wrongful termination in violation of public policy under the third exception to at-will employment.[92] After the claim was dismissed post-trial for being barred by governmental immunity, the plaintiff argued that the complaint "can be alternatively construed (or amended) to state a statutory claim."[93] But the court of appeals in *Conner* rejected that argument because it wrongly assumed that the statute provided a valid cause of action.[94] While *Conner* is not dispositive, it is persuasive regarding the Utah Supreme Court's likely view.

Second, the Utah Supreme Court has repeatedly expressed reluctance to create private rights of action for statutory violations.[95] Allowing a wrongful termination claim here without a valid statutory cause of action would effectively circumvent that principle. Where the Utah Supreme Court has been hesitant to create or imply private rights of action, it seems likely that it would also hesitate to permit workarounds. The Utah Supreme Court has consistently allowed the legislature to dictate how statutory restrictions are enforced rather than dictate the enforcement mechanisms itself through the common law.[96] There is no reason to diverge from

---

[90] *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 875 (10th Cir. 2013).
[91] *Conner v. Dep't of Com.*, 2019 UT App 91.
[92] *Id.* ¶ 21.
[93] *Id.* ¶ 26.
[94] *Id.*
[95] *See, e.g., Miller v. Weaver*, 2003 UT 12, ¶ 20; *Gordon v. Nostrom*, 2024 UT 18, ¶ 19; *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶¶ 26–31; *Buckner v. Kennard*, 2004 UT 78, ¶ 43; *Young v. Salt Lake City Sch. Dist.,* 2002 UT 64, ¶ 21.
[96] *See id.*

17

that practice here. Thus, Plaintiff must demonstrate a valid statutory cause of action in order to bring a wrongful termination claim. Accordingly, the court turns to whether § 39A-1-201 creates a private cause of action.

Whether a section of Utah Code "creates a right of action 'is a question of statutory interpretation.'"[97] The court "look[s] first to the plain language of the statute for an express indication that a private right of action was intended."[98] "Such an indication is made clear by 'explicit language' and does not 'require anyone to add language or make inferences to impart the full meaning of the statute.'"[99]

"In the absence of language expressly granting a private right of action in the statute itself, the courts of [Utah] are reluctant to imply a private right of action based on state law."[100] "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action."[101] Indeed, "[a] statute's mere prohibition of a certain act does not imply creation of a private right of action for its violation."[102]

Here, there is no express or implied private right of action to enforce § 39A-1-201. The statute is straightforward: prohibiting terminating an Adjutant General except for "resignation, disability, age, . . . or for cause," but it contains no suggestion of a private right of action. Plaintiff argues that the term "for cause" would be superfluous without a private right of action, but "[a] statute's mere prohibition of a certain act does not imply creation of a private right of

---

[97] *Gordon*, 2024 UT 18, ¶ 18.
[98] *Id.* (quoting *Machan*, 2005 UT 37, ¶ 24).
[99] *Id.* (quoting *Miller*, 2003 UT 12, ¶ 21).
[100] *Miller*, 2003 UT 12, ¶ 20.
[101] *Buckner*, 2004 UT 78, ¶ 43.
[102] *Conner*, 2019 UT App 91, ¶ 27 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 313 (2012)).

18

action for its violation."[103] Plaintiff also argues that the Utah Legislature's later amendment of § 39A-1-201 to remove the "for cause" requirement implies that the Legislature believes the "for cause" term created a private cause of action. Not so. It is not clear how removing "for cause" implies that earlier versions including "for cause" creates a private right of action. Instead, such an amendment is more likely to mean exactly what the language change does—that the Adjutant General is no longer protected by a "for cause" termination provision. It does not retroactively suggest a private right of action in the earlier version of the statute.

Overall, Utah Courts rarely find an implied private right of action. Plaintiff has not persuasively argued for one here. Accordingly, § 39A-1-201 does not create a private right of action, and Plaintiff cannot maintain a wrongful termination claim based on a violation of § 39A-1-201.

## IV.    Utah Code § 39A-1-201 Violation

The court has already concluded that § 39A-1-201 does not create a private right of action. That same reasoning applies here, and Plaintiff cannot maintain a claim for violation of § 39A-1-201 against the Defendants.

## V.    Civil Conspiracy

"The claim of civil conspiracy 'require[s], as one of [its] essential elements, an underlying tort.'"[104] "Where plaintiffs have 'not adequately pleaded . . . the basic torts they allege . . . dismissal of their civil conspiracy claim' is appropriate."[105] Here, the court has

---

[103] *Id.*
[104] *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21 (quoting *Coroles v. Sabey,* 2003 UT App 339, ¶ 36).
[105] *Id.*

19

dismissed Plaintiff's wrongful termination claim, which was the underlying tort for his civil conspiracy claim. Accordingly, Plaintiff's civil conspiracy claim will also be dismissed.

**ORDER**

Defendant's Motion to Dismiss[106] is GRANTED in PART and DENIED in PART. Plaintiff's substantive due process, wrongful termination, violation of Utah Code § 39A-1-201, and civil conspiracy claims are dismissed without prejudice. Plaintiff's procedural due process claim is not dismissed.

Signed June 12, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[106] ECF No. 39.